# IN THE UNITED STATES COURT OF FEDERAL CLAIMS
Washington, D.C.

## BID PROTEST

| | |
|---|---|
| CONTINENTAL SERVICE GROUP, INC.; and PIONEER CREDIT RECOVERY, INC., <br><br> Plaintiffs, <br><br> and <br><br> COLLECTION TECHNOLOGY, INC., PROGRESSIVE FINANCIAL SERVICES, INC., and ALLTRAN EDUCATION, INC. <br><br> Intervenor-Plaintiffs, <br><br> v. <br><br> THE UNITED STATES OF AMERICA, <br><br> Defendant, <br><br> and <br><br> THE CBE GROUP, INC.; PREMIERE CREDIT OF NORTH AMERICA, LLC; GC SERVICES LIMITED PARTNERSHIP; FINANCIAL MANAGEMENT SYSTEMS, INC.; VALUE RECOVERY HOLDINGS, LLC; WINDHAM PROFESSIONALS, INC.; and AUTOMATED COLLECTION SERVICES, INC., <br><br> Intervenor-Defendants. | CFC Nos. 17-449C, 17-499C, 17-493C, 17-517C, 17-578C, 17-558C 17-633C <br><br> Judge Thomas C. Wheeler |

### PLAINTIFF PIONEER CREDIT RECOVERY, INC.'S RESPONSE TO CONTINENTAL SERVICE GROUP, INC.'S MOTION TO AMEND THE COURT'S DECEMBER 12, 2017 ORDER AND IMPOSE A CAP ON ACCOUNT TRANSFERS

Plaintiff Pioneer Credit Recovery, Inc. ("Pioneer") respectfully submits this response to Plaintiff Continental Service Group, Inc.'s ("ConServe") motion to amend the Court's December 12, 2017 Order (ECF 215). ECF 219. ConServe's motion should be denied. ConServe's request

1

is contrary to the United States Court of Appeals for the Federal Circuit's December 8, 2017 Order ("CAFC Order") staying Part 2 of this Court's May 31 preliminary injunction ("PI"), and is based on material errors of fact and law.  Pioneer responds now as an interested party because the motion challenges transfers to Pioneer's 2017 award term extension ("ATE") contract.

## PIONEER CORRECTION OR CLARIFICATION OF FACTS[1]

**A.     Pioneer Has Authority to Operate ("ATO")**

ConServe (at 1) erroneously states Pioneer "apparently" lacks an ATO.  If ConServe had checked with the United States Department of Education ("ED"), the Department of Justice, Pioneer, or simply checked the CAFC Joint Appendix[2] in its own appeal, ConServe would have realized that the record already shows Pioneer maintains an ATO with ED.  ECF 171-2 at 4 (¶ 11) (June 28, 2017 Declaration of Jack Frazier explaining Pioneer's ATO with ED and Pioneer's capacity to meet ED requirements); see also CAFC Case No. 17-2155, ECF 274 at 42.

**B.     Any ED Delay Is Unfortunate But Not Unreasonable or Unprecedented; ConServe and Other Parties Have Failed to Inform this Court of Relevant Procedural Facts**

ED's delays are not unreasonable, excessive under the circumstances, or unprecedented. ConServe's Motion and statements by other parties during the December 12, 2017 status conference have failed to provide the relevant context.  Chief Judge Susan G. Braden was well aware of that context and chose not to take further action.

We are aware of numerous procurements where corrective action taken following a U.S. Government Accountability Office ("GAO") decision has resulted in delays in excess of six months or much more.  Such delays are not per se unreasonable as suggested by ConServe,

---

[1] Further facts and background relevant to this response are discussed below and in Pioneer's November 15 and 29 briefs.  CAFC Case No. 17-2155 ECF 274 at 2-23; id., ECF 297 at 1-9.
[2] "Appx" references the joint appendix filed in CAFC Case No. 17-2155.

especially in light of the presumption that government officials act in good faith. ConServe has certainly not met its burden to show lack of good faith here. Extended delays can be caused by many factors, including the number of protesters, awardees, evaluation factors, and protest issues; record size; solicitation amendments; the nature of the corrective action (*i.e.*, internal agency re-evaluation versus discussions/revised proposals); any ancillary Court actions; and protests or other challenges to the corrective action. All of these factors are present here.

Other parties have implied that ED has unreasonably delayed from the March 27, 2017 date of the GAO decision, but the relevant facts show otherwise. GAO's protest statute provides a sixty day period for an agency to report whether it will follow the GAO recommendation. After GAO issued its decision sustaining numerous protests based on several significant evaluation flaws, ConServe's and Pioneer's protests involving the procurement were still pending at GAO. ConServe withdrew its GAO protest and refiled at the COFC. Pursuant to 4 C.F.R. § 21.11, GAO then dismissed Pioneer's protest solely due to *ConServe's COFC filing*. On April 10, 2017, Pioneer filed a new protest at the COFC. COFC Case No. 17-499, ECF 1.

ConServe's March 28, 2017 complaint raised issues about ED's responsibility determination based on inconsistencies in ConServe's small business subcontracting plan that were not addressed in GAO's March 27 decision. COFC Case No. 17-449, ECF 1 at 23-32. On April 10, 2017, Pioneer protested its improper exclusion based on ED's flawed evaluation of Pioneer's subcontracting plan and disparate treatment. COFC Case No. 17-499, ECF 1 at 23-30. On May 19, 2017, within the sixty day GAO period, ED issued a notice of corrective action explaining it would follow GAO's recommendation and reopen the procurement. COFC Case No. 17-449 et al., ECF 122. On May 25, 2017, ED amended its corrective action, to allow for revised small business participation plans. Id., ECF 135.

3

On June 6, 2017, Automated Collection Services, Inc. ("ASCI") filed a complaint challenging ED's corrective action as "irrational, overly broad and unsupported." COFC Case No. 17-765, ECF 1. From May 19 to August 9, 2017, ED lacked certainty as to whether its corrective action was acceptable to this Court due to the then pending ACSI protest. On August 9, 2017, the COFC denied ASCI's motion for judgment, stating:

> In the court's judgment, ED should be entitled to take corrective action to address both the deficiencies identified by the March 27, 2017 GAO decision *and new information brought to the attention of ED. Although ED appears to be midway in reevaluating the proposals, it should take whatever time it deems necessary to make a reasoned decision to comply with statutory obligations and to serve the public interest.*

COFC Case No. 17-765, ECF 61 at 4 (emphasis added).

Between August 4 and October 19, 2017, ED filed regular status reports with the Court, describing ED's action, including: updating, among other things, the instructions to offerors; reviewing and evaluating revised proposals; drafting evaluation reports; conducting an assessment of the findings and ratings reported by the evaluating committees on 37 proposals, and identifying proposals that are most advantageous to ED.

At the same time ED counsel has been presumably involved in assisting ED source selection personnel through those steps, ED counsel was also engaged in responding to numerous protest filings before the COFC and the CAFC by an unusually large number of parties. Given all of these considerations, the ED delay is not unreasonable or unprecedented.

**C.   ED's Recent Account Transfers Are Reasonable and Prudent and Do Not Injure ConServe**

ConServe (at 1-4) claims ED has unreasonably issued almost 1 million transfers since the CAFC Order, that ED will transfer another 1 million in January 2018, and that the Court should micro-manage ED's contract administration by imposing a modified Part 2 PI with a cap of

4

140,000 transfers per month. Yet, ConServe's own claimed evidence[3] shows ED has acted reasonably and prudently, without injury to ConServe or others.

First, any COFC ordered cap would be contrary to the CAFC Order. The CAFC Order lifted any limits on ED transfers to contracts that are not the subject of the COFC bid protests filed by ConServe, Pioneer and others concerning the December 2016 large business awards. A cap would reinstate Part 2 of the PI in part by barring transfers over 140,000 accounts. That is an improper end run on the CAFC Order. If ConServe has concerns with the CAFC Order, it can go back to the CAFC or appeal. What it cannot do is ask the COFC to overrule the CAFC.

In any event, ConServe's Exhibit actually shows ED acted reasonably. In December 2017, ED transferred less than 1 million accounts (approximately 927,000). The COFC had enjoined ED from transferring accounts to other contract vehicles from March 29 to December 8, 2017, a period of slightly more than 8 months.[4] That reflects less than 115,000 accounts per month (based on the more than eight month period of the Part 2 TRO and PI). ED had historically transferred substantially greater numbers of accounts per month[5]. The numbers reviewed by Judge Taranto during argument confirm this. ED's December 2017 transfers are thus less than one would have expected and therefore reasonable and prudent.

---

[3] Exhibit 1 to ConServe's declaration submitted in support of its Complaint (COFC 17-449, ECF 1-1; Appx100071) was discussed during the December 8, 2017 CAFC argument. Judge Richard G. Taranto, in particular, questioned how the Exhibit showed dilution. The Exhibit was originally filed subject to the COFC protective order, but the court read excerpts in open court during the CAFC hearing.

[4] COFC Case No. 17-499, et al., ECF 9 (Mar. 29 temporary restraining order ("TRO")); Id., ECF 56 (Apr. 10 TRO Extension); Id., ECF 73 (Apr. 24 TRO Extension and Modification); Id., ECF 132 (May 22 Continuation of PI); Id., ECF 143 (May 31 Continuation of PI).

[5] Conserve (at 2) notes ED's historic practice was to transfer approximately one-third of the accounts to small businesses ("SB") and that the transfers per month to SBs were no more than 140,000 accounts. This yields a maximum historic transfer rate of 420,000 accounts (3 x 140,000). For the eight month injunction period, that would yield 3,336,000 total transfers, far above the actual 927,000 transfers in December.

Chief Judge Braden aptly noted that the transfers arise from an endless flow of borrowers seeking assistance. CAFC Case No. 17-2155, Appx101875 (May 22, 2017 COFC Transcript, 58:12-59:8, noting "[E]very month, there are new accounts that come up because people are in default" and there is "new work that will be coming down the road" that serves to "offset the concern about dilution"); see also id., ECF 274 at 19, 25, 30 (citing same). Since ConServe is still in the competition for a new 5-year contract with a 5-year option to extend, it suffers no harm if accounts that begin before its contract starts are handled by other contractors. Moreover, student loans have a historically high growth rate that is not likely to change. In other words, any monthly placements allegedly lost now due to procurement delays will be more than offset during the five years of contract performance (plus any options) given natural growth. This makes the contract overall more valuable to the contractors that ultimately receive award under the protested procurement.

## **ARGUMENT**

**I.      The COFC Does Not Sit in Judgment or Otherwise Overturn CAFC Stay Orders**

ConServe improperly asks this Court to overrule the CAFC Order that stayed Part 2 of the PI. Part 2 enjoined ED from transferring accounts to contract vehicles that were not the subject of the underlying bid protests before the COFC.

ConServe's argument (at 1) that the CAFC stayed Part 2 "without any explanation for its decision" is incomplete. The CAFC Order first recited the four factors considered in evaluating a stay pending appeal, and then ruled in part:

> Appellants' requests are GRANTED insofar as the preliminary injunction enjoined "transferring work to be performed under the contract at issue in this case to other contracting vehicles to circumvent or moot this bid protest."

CAFC Case No. 17-2155, ECF at 6; id. at 5 (reciting four factors).

Appellants had argued that Part 2 of the PI was overbroad and unreasonable because it relied on ConServe's "dilution" theory previously dismissed and discredited by the COFC. The CAFC Order recognized that appellants were likely to succeed on their claims that Part 2 (staying transfers to the 2014 SBs and the two 2017 ATE awardees) was overbroad and unreasonable and that appellants had established irreparable harm.

ConServe again relies on its discredited and dismissed "dilution" or "siphoning" argument. ConServe Motion at 1, 3 (dilution) and 3, 4 (siphoning). The ConServe "dilution" theory at Complaint Count VII was (1) recognized as an uncertified Contract Disputes Act Claim; (2) found to have no basis given the nature of the constant stream of new accounts from borrowers (CAFC Case No. 17-2155, Appx101875 (May 22, 2017 COFC Transcript, 58:12-59:8 quoted above)); and (3) dismissed by Chief Judge Braden (COFC 17-449, ECF 87 at 2). There is no other dilution cause of action raised by ConServe. Having dismissed Count VII, there is nothing left that supports Part 2 of the PI and the COFC lacked the authority to enjoin the other contract vehicles, including the 2017 ATE and the 2014 SB contracts.

During the CAFC oral argument[6], the questions from the panel of judges clearly reflected serious doubts about any dilution claim. This is further reflected in the CAFC's subsequent order denying CBE Group, Inc.'s motion to amend the CAFC's Order. CAFC Case No. 17-2155, ECF 312. For example, Judge Timothy B. Dyk questioned where that information was in the record. Oral Argument Recording at 21:15 ("So where's the record? This record is pretty thin in terms of dilution or diversion. Right? What did you put in that would support the notion that the government was diverting work from prospective awardees?"). In response, ConServe counsel

---

[6] Recording available at: http://www.cafc.uscourts.gov/oral-argument-recordings?title=&field_case_number_value=2017-2155&field_date_value2%5Bvalue%5D%5Bdate%5D=2017-12-08. Citations to the recording reference the minute/second at which the quoted text starts.

pointed only to the spreadsheet discussed in Fact Section C above. Later in the proceedings, Judge Dyk, however, noted that ConServe's dilution theory had been dismissed. Id. at 28:50.

The current ConServe motion is yet again premised on the same discredited dilution theory and is therefore an improper attempt to overturn the CAFC stay order.

ConServe seeks (at 5) support for its cap from an out-of-context question asked during the CAFC oral argument. The tenor of the argument, including comments from multiple judges, and the resulting stay order, was that there was no support in the record for any claim based on dilution. The full context of the exchange is provided below. Mr. Canni, in the midst of presenting ConServe's characterization of the "status quo" to be preserved by injunctive relief, raised the issue of a cap on accounts. Judge Dyk responded: "But there's no cap in the injunction. It just says you can't do it," (Oral Argument Recording 30:55) beginning the following exchange:

> Mr. Canni: Because the [DOJ] was unwilling to provide data to the court. . . . They refused to cooperate with the court's efforts to fashion appropriate relief here, so with its hands tied behind its back, the [COFC] did what we believe was reasonable.
>
> Judge Dyk: So what you're saying is that because the government didn't agree to the cap, it was appropriate for the [COFC] not to impose a cap?

Oral Argument Recording at 30:58 and 31:28, respectively.

> Mr. Canni: The [COFC] does not have access to the data, first of all, to start micromanaging or administering that contract.
>
> Judge Dyk: [I]t's your job to provide the data and if you can't provide it from your own resources, you can ask for discovery to get it. But the problem is here, we have [SBs] who are entitled to awards. . . and all of a sudden, under the injunction they're not entitled to receive accounts. And what you are complaining about is the potential, I guess, that the [SBs] would get more business than they would have otherwise as a result of the corrective action or actions by the government and that you wanted to make sure that they didn't transfer the business, the accounts, to the [SBs]. That would seem perhaps to justify an injunction saying well the

[SBs] have to get the same amount they were getting before they can't get anything additional, but that's not what the injunction says.

Id. at 31:36 and 31:44, respectively.

Mr. Canni: [T]he [SBs] are not entitled to any account transfers.

Judge Dyk: It's not a question of entitlement. It's a question of whether you have any basis for denying them the kind of level of account servicing that they had before.

Id. at 32:41 and 32:50, respectively.

In arguing that the COFC did not abuse its discretion in fashioning the overbroad injunctive relief, ConServe admits the COFC faced challenges in tailoring that relief in any real way, conceding that it was not feasible to do the very thing it now asks of the COFC. See id. at 33:25 (Mr. Canni noting in part: "***[T]he problem for the [COFC], as you can imagine [with] the number of divergent interests arguing here, would have been for the court to get involved into the administration of that contract and to set a cap and to manage that.***") (emphasis added); id. at 34:20 (Mr. Canni noting in part "[F]or the [COFC] to get involved in the business of caps and setting caps would require the [COFC] on a monthly basis to trust the [ED's] pool number. So [ED] would have to give the court a pool—we have 200,000 transfers available and now we want you to cap those at 60 or 70,000 to reflect a third. ***The court could not get into the business of administration . . .***) (emphasis added).[7]

The COFC does not micromanage contract administration – yet that is the role ConServe's requested cap would require.

---

[7] ConServe bears the burden to establish cause for the COFC to grant injunctive relief, but, as Judge Dyk recognized, ConServe did not even seek the information it needed to bring its request to bear. Oral Argument Recording at 33:47 to 34:11 (exchange between Judge Dyk and ConServe counsel regarding ConServe's lack of motion to compel discovery).

**II. Pioneer Has a Valid Contract for Receipt of Transfers; the Proposed Cap Does Not Preserve the Status Quo**

ConServe continues to allege (at 2) without support that the 2017 ATEs are improper awards. The 2017 ATE contracts that were subject to Part 2 of the PI are valid contract awards, issued to address a procurement defect raised by Pioneer and three other plaintiffs in Coast Professional, Inc. et al. v. United States, 120 Fed. Cl. 727 (2015), vacated and remanded, 828 F.3d 1349, 1353 (Fed. Cir. 2016); Appx810022, 810027, 810095-96, 810167, 810169, 810171, 810177-78, 102081 (documents from COFC Case No. 15-207 et al.); COFC Case No. 17-664, ECF 60 (COFC Opinion dismissing ConServe 2017 ATE protest).

Moreover, contrary to ConServe's arguments (at 4), the proposed cap does not preserve the status quo. There was no bar to performing under the 2017 ATEs before the COFC issued its overbroad TROs or PIs.[8]

**CONCLUSION**

For the foregoing reasons, Pioneer requests that the Court deny the ConServe Motion.

Respectfully submitted,

Date: December 20, 2017

By: /s/ Jonathan D. Shaffer
Jonathan D. Shaffer (jshaffer@smithpachter.com)
SMITH PACHTER MCWHORTER PLC
8000 Towers Crescent Drive, Suite 900
Tysons Corner, Virginia 22182
Tel: (703) 847-6300; Fax: (703) 847-6312
*Counsel of Record for Plaintiff Pioneer Credit Recovery, Inc.*

*Of Counsel*:
Mary Pat Buckenmeyer (mbuckenmeyer@smithpachter.com)
Sean K. Griffin (sgriffin@smithpachter.com)

---

[8] Judge Dyk observed: "No, that's not the status quo. The status quo is to allow the government to continue to make awards under these other contracts." Oral Argument Recording at 22:37.

# CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of December 2017, Pioneer Credit Recovery, Inc.'s "Response to Continental Service Group, Inc.'s Motion to Amend the Court's December 12, 2017 Order and Impose a Cap on Account Transfers" was electronically filed. I understand that notice of this filing will be sent to all parties by operations of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Jonathan D. Shaffer<br>
Jonathan D. Shaffer